UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
THE BOARD OF TRUSTEES OF THE LOCAL 810  :
AFFILIATED PENSION FUND,                :
                                        :
                           Plaintiff,   :       REPORT AND
                                        :       RECOMMENDATION
            -against-                   :
                                        :       23-CV-1616 (DLI)(MMH)
JOSEPH ELETTO TRANSFER, INC.,           :
                                        :
                           Defendant.   :
------------------------------------------------------------------ x

**MARCIA M. HENRY**, United States Magistrate Judge:

Plaintiff The Board of Trustees of the Local 810 Affiliated Pension Fund ("the Fund")

sued Defendant Joseph Eletto Transfer, Inc., alleging violations of the Employee Retirement

Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.* ("ERISA"), as amended by the

Multiemployer Pension Plan Amendment Act of 1980 ("MPPAA").  (*See generally* Compl.,

ECF No. 1.)[1]  Before the Court is Plaintiff's motion for default judgment pursuant to Rule

55(a) of the Federal Rules of Civil Procedure.  (*See generally* Mot., ECF No. 9.)[2]  The

Honorable Dora L. Irizarry referred the motion for report and recommendation.  For the

reasons set forth below, the Court respectfully recommends that the motion should be **granted**

**in part**.

---

[1] All citations to documents filed on ECF are to the ECF document number (i.e., "ECF No. ___")
and pagination ("___ of ___") in the ECF header unless otherwise noted.

[2] The motion papers include the Notice of Motion (Mot., ECF No. 9); a statement of damages
(Damages Stmt., ECF No. 9-1); the declaration of Plaintiff's counsel (Torres Decl., ECF No. 9-2)
and its seven exhibits (Torres Decl. Ex. ___, ECF Nos. 9-9 through 9-15); a memorandum of law
(Mem., ECF No. 9-3); case law cited in the memorandum of law (ECF Nos. 9-4 and 9-5); the Clerk
of Court's certificate of default (ECF No. 9-6); a certification of service for the default motion
papers (ECF No. 9-7); a proposed default judgment order (Proposed Default Judgmt., ECF No. 9-
8); and Plaintiff's counsel's supplemental declaration (Torres Supp. Decl., ECF No. 10.)

## I.    BACKGROUND

### A.    Factual Allegations

The following facts are taken from the Complaint and documents incorporated by reference into the Complaint, and are assumed to be true for the purposes of this motion. *Bricklayers & Allied Craftworkers Loc. 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187–90 (2d Cir. 2015).

The Fund is a multiemployer pension plan within the meaning of ERISA with its principal place of business at 24-09 38th Avenue, Long Island City, New York 11101. (Compl., ECF No. 1 ¶ 4.)  Plaintiff's trustees are fiduciaries and, collectively, the plan sponsor and administrator of the Fund within the meaning of ERISA.  (*Id.* ¶ 5.)  Defendant is a domestic corporation engaged in the trucking business located at 600 West John Street, Hicksville, New York 11801 and 575 Underhill Boulevard, Syosset, New York 11791.  (*Id.* ¶¶ 6–7; Compl. Ex. A, ECF No. 1 at 10.)  Defendant is an employer within the meaning of ERISA.  (Compl., ECF No. 1 ¶ 6.)

In or about January 2015, Defendant executed a collective bargaining agreement (the "CBA") with the International Brotherhood of Teamsters Local 810 (the "Union"), which represents Defendant's employees.  (*Id.* ¶ 9; *see generally* Compl. Ex. A, ECF No. 1 at 6–19.)  Under the CBA, Defendant was required to contribute to the Fund weekly for each employee covered by the CBA.  (Compl., ECF No. 1 ¶ 9; Compl. Ex. A, ECF No. 1 at 14 art. 15.)  On or about March 15, 2017, Defendant ceased all business operations and/or ceased to have an obligation to contribute to the Fund, and therefore "completely withdrew" from the Fund

within the meaning of ERISA Section 4203(a), 29 U.S.C. § 1383(a).  (Compl., ECF No. 1 ¶ 10.)

The Fund attempted to collect the unpaid contributions from Defendant.  *First*, in a certified letter dated February 10, 2017 (the "Notice Letter"), the Fund notified Defendant that, because of Defendant's expected cessation of all operations, Defendant will have effected a complete withdrawal from the Fund.  (Compl. Ex. B, ECF No. 1 at 21.)[3]  The Notice Letter further stated that Defendant would be subject to the payment of withdrawal liability based on unfunded vested benefits at the time of withdrawal.  (Compl., ECF No. 1 ¶ 11; Compl. Ex. B, ECF No. 1 at 25 § 1; *id.* at 32 tbl. 4.)  The Fund demanded a total of $849,011 in quarterly payments of $6,274.50 each plus interest, to begin within 60 days, or by April 10, 2017.  (Compl., ECF No. 1 ¶ 11; Compl. Ex. B, ECF No. 1 at 34 § VII.)  The Notice Letter advised Defendant that failure to timely begin payment would constitute default and would entitle the Fund to immediate payment of the full amount of withdrawal liability with interest.  (Compl. Ex. B, ECF No. 1 at 22.)  The Fund did not receive any payments from Defendant in response to the Notice Letter.  (Compl., ECF No. 1 ¶ 12.)  *Second*, in a certified letter dated May 25, 2017 (the "Default Letter"), the Fund informed Defendant that it was in default of its

---

[3] The letter attached the Fund's "Report on Employer Withdrawal Liability" prepared by an auditor.  (*See generally* Compl. Ex. B, ECF No. 1 at 24–34.)

withdrawal liability and demanded immediate payment of the full withdrawal liability plus accrued interest.  (Compl. Ex. C, ECF No. 1 at 36.)[4]

To date, Defendant has not cured its default, paid the withdrawal liability, or contested the withdrawal liability calculations.  (Compl., ECF No. 1 ¶ 13.)

### B.    Procedural History

Plaintiff initiated this action on March 2, 2023 and, the next day, served Defendant with the Summons and Complaint through New York's Secretary of State.  (Compl., ECF No. 1; Aff. of Service, ECF No. 4.)  After Defendant failed to appear or otherwise respond to the Complaint, the Clerk of Court entered default against Defendant on May 3, 2023.  (Entry of Default, ECF No. 8.)  On May 15, 2023, Plaintiff moved for default judgment and damages and, on the same date, served Defendant by mail with the motion for default judgment at Defendant's last known business addresses.  (*See generally* Mot., ECF No. 9; Cert. of Service, ECF No. 9-7.)  Judge Irizarry referred the motion for report and recommendation.  (May 16, 2023 Order Referring Mot.)  Subsequently, Plaintiff reported that the motion papers were returned by United Parcel Service as "Company or Person Unknown-Not Delivered" and that no other known addresses exist for Defendant.  (Torres Supp. Decl., ECF No. 10 ¶¶ 5–6.)

## II.    STANDARD FOR DEFAULT JUDGMENT

Rule 55 of the Federal Rules of Civil Procedure dictates a two-step process for a party to obtain a default judgment.  Fed. R. Civ. P. 55(a)–(b); *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005); *Nam v. Ichiba Inc.*, No. 19-CV-1222 (KAM), 2021 WL 878743, at *2

---

[4] The Complaint alleges that the Default Letter "offered [Defendant] an opportunity to cure the default within 60 days."  (Compl., ECF No. 1 ¶ 12.)  However, the Default Letter demands "immediate" payment and does not state an additional cure period.  (Compl. Ex. C, ECF No. 1 at 36.)

(E.D.N.Y. Mar. 9, 2021). *First*, when a party uses an affidavit or other proof to show that a party has "failed to plead or otherwise defend" against an action, the clerk shall enter default. Fed. R. Civ. P. 55(a). If a claim is for a sum certain or a sum that can be made certain by computation, the clerk can enter judgment. Fed. R. Civ. P. 55(b)(1). *Second*, and "[i]n all other cases, the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2); *Victoriano Gonzalez v. Victoria G's Pizzeria LLC*, No. 19-CV-6996 (DLI)(RER), 2021 WL 6065744, at *5 (E.D.N.Y. Dec. 22, 2021). To enter or effectuate judgment the Court is empowered to conduct an accounting, determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter. Fed. R. Civ. P. 55(b)(2).

The decision to grant or deny a default motion is "left to the sound discretion of a district court." *Shah v. New York State Dep't of Civ. Serv.*, 168 F.3d 610, 615 (2d Cir. 1999) (cleaned up). The Court must draw all reasonable inferences in favor of the movant. *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). However, "a default only establishes a defendant's liability if those allegations are sufficient to state a cause of action against the defendant." *Double Green Produce, Inc. v. F. Supermarket Inc.*, 387 F. Supp. 3d 260, 265 (E.D.N.Y. 2019) (cleaned up).

## III.    JURISDICTION AND VENUE

### A.    Subject Matter Jurisdiction

The Court has original jurisdiction over Plaintiff's claims pursuant to ERISA, 29 U.S.C. §§ 1132(e)(1), 1132(f), and 1451(c). *See* 28 U.S.C. § 1331.

### B.    Personal Jurisdiction

"[B]efore a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant." *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading*

*Corp.*, 619 F.3d 207, 213 (2d Cir. 2010).  "For a federal court to exercise personal jurisdiction over a defendant, the plaintiff's service of process upon the defendant must have been procedurally proper."  *Windward Bora, LLC v. Valencia*, No. 19-CV-4147 (NGG)(RER), 2020 WL 6470293, at *2 (E.D.N.Y. Oct. 16, 2020), *adopted by* 2020 WL 6450286 (E.D.N.Y. Nov. 3, 2020) (cleaned up); *see Sik Gaek, Inc. v. Yogi's II, Inc.*, 682 F. App'x 52, 54 (2d Cir. 2017) (summ. order) ("Among other things, the moving party must demonstrate that entry of default is appropriate, which requires a showing that the nonappearing party was effectively served with process.")  (citing 10A Charles Alan Wright *et al.*, Fed. Prac. & Proc. § 2682 (4th ed. 2008)).  Here, Plaintiff served Defendant by delivering copies of the Summons and Complaint with the New York Secretary of State.  (Aff. of Service, ECF No. 5.)  This method of service comports with federal and state law for service of process on a corporation.  Fed. R. Civ. P. 4(h)(1)(A), (e)(1); N.Y. C.P.L.R. § 311(a)(1); N.Y. Bus. Corp. L. § 306(b)(1).

### C.    Venue

An action to recover unpaid contributions under ERISA may be brought in the district where the plan is administered.  29 U.S.C. §§ 1132(e)(2) & 1451(d).  Because the Fund is administered in Long Island City, New York, venue in this district is appropriate.

## IV.    DEFAULT JUDGMENT FACTORS

Courts use the same three-factor test used to set aside a default judgment to determine whether to grant a default judgment.  *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993); *Avail 1 LLC v. Latief*, No. 17-CV-5841 (FB)(VMS), 2020 WL 5633869, at *4 (E.D.N.Y. Aug. 14, 2020).  Specifically, courts examine: "(1) whether the defendant's default was willful; (2) whether the defendant has a meritorious defense to the plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the

motion for default judgment." *Courchevel 1850 LLC v. Rodriguez*, No. 17-CV-6331 (MKB), 2019 WL 2233828, at *3 (E.D.N.Y. May 22, 2019) (citing *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 170–71 (2d Cir. 2001)).

As to the first factor of willfulness, a defendant's failure to answer a complaint and respond to a motion for default judgment is considered willful. *Acosta v. DRF Hosp. Mgmt. LLC*, No. 18-CV-346 (DRH)(AKT), 2019 WL 1590931, at *6 (E.D.N.Y. Mar. 13, 2019), *adopted by* 2019 WL 1585225 (E.D.N.Y. Apr. 12, 2019) ("When a defendant is continually and entirely unresponsive, defendant's failure to respond is considered willful.") (cleaned up). Because Defendant was properly served, its failure to respond or otherwise appear in this action demonstrates willfulness.

Second, without an answer to the Complaint, "the Court cannot determine whether a defendant  has a meritorious defense and granting a default judgment is favored under those circumstances." *Avedana v. Casa Ofelia's Bakery LLC*, No. 20-CV-2214 (DG)(AKT), 2021 WL 4255361, at *4 (E.D.N.Y. Aug. 19, 2021), *adopted by* 2021 WL 4248857 (E.D.N.Y. Sept. 17, 2021); *Finkel v. Gaffney-Kroese Elec. Supply Corp.*, No. 22-CV-1777 (DG)(TAM), 2023 WL 2579165, at *4 (E.D.N.Y. Feb. 22, 2023), *adopted by* Order Adopting R. & R., No. 22-CV-1777 (E.D.N.Y. Mar. 10, 2023); *Gesauldi v. D. Gangi Contracting Corp.*, No. 18-CV-3773 (FB)(SJB), 2019 WL 1130729, at *3 (E.D.N.Y. Feb. 11, 2019), *adopted by* 2019 WL 1128356 (E.D.N.Y. Mar. 12, 2019). Accordingly, this factor weighs in favor of default judgment.

Third, the Fund will be prejudiced if the motion for default judgment is denied because it has "no alternative legal redress." *United States v. Myers*, 236 F. Supp. 3d 702, 708–09 (E.D.N.Y. 2017).  In other words, because Defendant has failed to respond or otherwise appear

in this action, without the entry of default judgment, the Fund would be unable to recover the unpaid withdrawal liability. *Trs. of the New York City Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, Apprent., Journeyman Retraining, Educ. & Indus. Fund v. Inniss Constr., Inc.*, No. 20-CV-6894 (LJL)(KHP), 2021 WL 2556130, at *2 (S.D.N.Y. May 13, 2021), *adopted sub. nom. by Trs. of New York City Dist. Council of Carpenters Pension Fund v. Inniss Constr., Inc.*, 2021 WL 2555840 (S.D.N.Y. June 22, 2021).

Based on the foregoing, entry of default judgment is permissible. The Court now turns to the issue of liability.

## V.   **LIABILITY**

Section 515 of ERISA provides that an employer "obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall . . . make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145; *Trs. of Pavers & Road Builders Dist. Council Welfare, Pension, & Annuity Funds v. Cape Mount Heavy Constr. & Assocs., LLC*, No. 22-CV-5050 (KAM)(JRC), 2023 WL 5830338, at *4 (E.D.N.Y. July 31, 2023), *adopted by* 2023 WL 5287218 (E.D.N.Y. Aug. 17, 2023). "If an employer withdraws from a multiemployer plan in a complete withdrawal or partial withdrawal, then the employer is liable to the plan[.]" 29 U.S.C. § 1381(a). A complete withdrawal occurs when an employer "permanently ceases to have an obligation to contribute under the plan, or    permanently ceases all covered operations under the plan." *Id.* § 1383(a); *see also Finkel v. Captre Elec. Supply Co.*, No 14-

CV-3584 (RJD)(JO), 2015 WL 5316257, at *3 (E.D.N.Y. July 31, 2025), *adopted by* 2015 WL 5330388 (E.D.N.Y. Sept. 11, 2015).

The allegations in the Complaint establish Defendant's liability to the Fund. Specifically, the Fund alleges that Defendant is an "employer" who was required to make contributions to the Fund under the terms of the CBA, which Defendant executed on March 4, 2015. (Compl., ECF No. 1 ¶¶ 6, 9; Compl. Ex. A, ECF No. 1 at 36.) The CBA covers the period between January 20, 2015, and January 19, 2018, and states, in relevant part, that "[Defendant] will contribute to the Local 810 Affiliated Pension Plan in accordance with" amounts set forth therein for each employee covered by the CBA. (Compl., ECF No. 1 ¶ 9; Compl. Ex. A, ECF No. 1 at 14 art. 15.) The Fund further alleges that Defendant completely withdrew from the Fund within the meaning for ERISA because "[o]n or about March 15, 2017, [Defendant] ceased all covered operations" under the CBA and ceased to have an obligation to contribute to the Fund. (*See* Compl., ECF No. 1 ¶ 10; Torres Decl., ECF No. 9-2 ¶ 4.)

Based on the foregoing, the Court respectfully recommends entry of default judgment against Defendant on the Fund's ERISA withdrawal liability claim.

## VI. <u>DAMAGES</u>

"While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Bricklayers*, 779 F.3d at 189 (cleaned up). "Rather, a court must ensure that there is an evidentiary basis for the damages sought by a plaintiff before entering judgment in the amount demanded." *Trs. of*

*Pavers & Rd. Builders Dist. Council*, 2023 WL 5830338, at *5 (citing *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)).

"In an action to compel an employer to pay withdrawal liability, any failure of the employer to make any withdrawal liability payment within the time prescribed shall be treated in the same manner as a delinquent contribution (within the meaning of section 1145 of this title)." 29 U.S.C. § 1451(b). "Therefore, in accordance with 29 U.S.C. § 1132(g)(2)—which sets forth the applicable categories of damages available to a multiemployer pension fund when a participating employer fails to remit contributions (or in this case withdrawal liability payments)—a pension plan is required to be awarded" the unpaid withdrawal liability, accrued interest, liquidated damages (if applicable), attorneys' fees and costs, and other relief as the Court deems equitable. *Div. 1181 Amalgamated Transit Union–New York Emps. Pension Fund v. D & A Bus Co., Inc.*, 270 F. Supp. 3d 593, 614 (E.D.N.Y. 2017) (citing 29 U.S.C. § 1132(g)(2)). Here, Plaintiff seeks the withdrawal liability payment, accrued interest, liquidated damages, and costs.[5] (Pl. Mem., ECF No. 9-3 at 7–12.)

### A.    Amount of Withdrawal Liability

First, the Fund seeks withdrawal liability principal in the amount of $849,011. (Pl. Mem., ECF No. 9-3 at 7–10.)

"Generally, where a plan sponsor seeks withdrawal liability payments, it must show only that it complied with statutory procedural requirements." *Div. 1181 Amalgamated Transit*

---

[5] The prayer for relief in the Complaint also seeks reasonable attorneys' fees, but the Fund does not request them in the default motion submission or proposed default judgment order. (*See generally* Mot., ECF No. 9.) If the Fund seeks attorneys' fees in the default motion, the Court respectfully recommends that the request should be denied without prejudice because the Fund does not provide any documentation to support an award of attorneys' fees. *See Trs. of Plumbers Loc. Union No. 1 Welfare Fund, Vacation & Holiday Fund, Trade Educ. Fund, & 401(k) Sav. Plan*

*Union*, 270 F. Supp. 3d at 608. Therefore, "[a]s soon as practicable after an employer's complete or partial withdrawal, the plan sponsor shall notify the employer of the amount of the liability and the schedule for liability payments, and demand payment in accordance with the schedule." 29 U.S.C. § 1399(b)(1). The employer may ask the plan sponsor to review its determination of liability and may furnish additional relevant information to the plan sponsor. *Id.* § 1399(b)(2). Additionally, any dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under 29 U.S.C. §§ 1381 through 1399 must be resolved through arbitration within statutorily determined deadlines measured from the dates of the plan sponsor's notice or the employer's request for review. 29 U.S.C. § 1401(a); *see UFCW Loc. 50 Pension Fund v. G & W Food Prod., Inc.*, No. 20-CV-4751 (AMD)(LB), 2021 WL 3934139, at *5 (E.D.N.Y. Aug. 17, 2021), *adopted sub nom. by UFCW Loc. 50 [Pension] Plan v. G&W Food Prod., Inc.*, 2021 WL 3931351 (E.D.N.Y. Sept. 2, 2021). However, after receiving notice of withdrawal liability, an employer must make payments according to the plan sponsor's schedule within 60 days of the notice even if the employer seeks review or appeal of the liability determination or the payment schedule. 29 U.S.C. §§ 1399(c)(2); *Bakery & Confectionery Union v. Mrs. Maxwell's Bakery, Inc.*, No. 21-CV-308

---

*v. M. Vascellaro, Inc.*, No. 21-CV-4076 (DG)(CLP), 2022 WL 17820119, at *10 (E.D.N.Y. Aug. 10, 2022) ("The burden is on the party moving for attorney's fees to justify the hourly rates sought.") (cleaned up).

(RPK)(SJB), 2022 WL 18107257, at *6 (E.D.N.Y. Dec. 6, 2022), *adopted by* Order Adopting R. & R., No. 21-CV-308 (RPK)(SJB) (E.D.N.Y. Jan. 3, 2023).

If the employer fails to make payments pursuant to the schedule set forth in the initial notice of withdrawal liability, the plan sponsor must notify the employer of its default.[6]  *See Gesauldi v. Seacoast Petro. Prods., Inc.*, 97 F. Supp. 3d 87, 97–98 (E.D.N.Y. 2015) (adopting report and recommendation) (collecting cases).  "Upon a finding of default, 'a plan sponsor may require immediate payment of the outstanding amount of an employer's withdrawal liability, plus accrued interest on the total outstanding liability from the due date of the first payment which was not timely made.'"  *Ret. Fund of Loc. 1482 Paint & Allied Prod. Mfrs. v. N. Adhesives, Inc.*, No. 22-CV-5850 (HG)(RML), 2023 WL 7688689, at *3 (E.D.N.Y. June 20, 2023) (citing 29 U.S.C. §§ 1399(c)(5)), *adopted by* Order Adopting R. & R., No. 22-CV-5850 (HG)(RML) (E.D.N.Y. July 11, 2023).

Here, the Fund establishes its entitlement to the full amount of the withdrawal liability principal.  The Fund alleges that it determined the amount of Defendant's liability and notified the Defendant by mailing the Notice Letter demanding payment of $849,011, setting forth the payment schedule, and attaching the auditor's report.  (Torres Decl., ECF No. 9-2 ¶ 6; Torres Decl. Ex. B, ECF No. 9-10.)  Defendant failed to make the demanded payments or to seek review of the amount of withdrawal liability.  (Torres Decl., ECF No. 9-2 ¶ 7.)  The Fund then mailed the Default Letter notifying Defendant of its default and demanding immediate

---

[6] "Default" in the context of unpaid withdrawal liability means "the failure of an employer to make, when due, any payment under this section, if the failure is not cured within 60 days after the employer receives written notification from the plan sponsor of such failure," and "any other event defined in rules adopted by the plan which indicates a substantial likelihood that an employer will be unable to pay its withdrawal liability."  29 U.S.C. § 1399(c)(5).

payment of the full withdrawal liability plus accrued interest.  (Torres Decl. Ex. C, ECF No. 9-11 at 2.)  More than 60 days have elapsed since the Notice and Default Letters, yet Defendant has failed to make any payments and still has not requested a review of the Fund's determination of withdrawal liability or the payment schedule.  (*See* Pl. Mem., ECF No. 9-3 at 9; Torres Decl., ECF No. 9-2 ¶ 8.)

Additionally, "since [Defendant] failed to timely request arbitration, its ability to contest the amount of withdrawal liability due and owning is foreclosed," and the Court retains discretion to adopt the plan's requested amount of unpaid withdrawal liability without any supporting calculations.  *Div. 1181 Amalgamated Transit Union*, 270 F. Supp. 3d at 614. Nonetheless, the Fund submits the auditor's report setting forth detailed calculations of the amount of withdrawal liability pursuant to the MPPAA and related regulations. (Torres Decl. Ex. B, ECF No. 9-10 at 5–15.)  Therefore, the Fund sufficiently establishes its request for immediate payment of the withdrawal liability principal in accordance with 29 U.S.C. § 1399(c)(5).  *See Gaffney-Kroese Elec. Supply Corp.*, 2023 WL 2579165, at *5 & n.5 (awarding plan sponsor's requested amount of withdrawal liability when its actuary prepared a report using the calculation methods set out in Section 4211(c)(3) of ERISA).

Accordingly, the Court respectfully recommends that the Fund should be awarded **$849,011** in withdrawal liability principal.

### B.    Interest

The Fund also seeks interest on the outstanding unpaid withdrawal liability in the amount of $225,783.86, reflecting accrued interest from May 25, 2017, the date of the Default Letter, to May 15, 2023, the date of this motion.  (Torres Decl., ECF No 9-2 ¶ 13; Pl. Mem., ECF No. 9-3 at 10–11.)  To determine the accrued interest, the Court ascertains the start date

for the accrual of interest, the applicable interest rate, and the relevant formula to calculate the accrued interest.

First, interest accrues "on the total outstanding liability from the due date of the first payment which was not timely made." *Bakery & Confectionery Union*, 2022 WL 18107257, at *10 (citing 29 U.S.C. § 1399(c)(5)); *see also* 29 C.F.R. § 4219.32(d) ("Except as otherwise provided in rules adopted by the plan, the due date from which interest accrues shall be, for an overdue withdrawal liability payment and for an amount of withdrawal liability in default, the date of the missed payment that gave rise to the delinquency or the default.").  According to the Notice Letter of February 10, 2017, Defendant's first quarterly withdrawal liability payment was due to the Fund no later than April 10, 2017, and Defendant failed to pay the Fund on that date or thereafter. (Torres Decl. ECF No. 9-2 ¶ 7; Torres Decl. Ex. B, ECF No 9-10 at 2.)  Further, the Default Letter demanded immediate payment of the total outstanding withdrawal liability *and* accrued interest, suggesting that the interest began to accrue earlier than May 25, 2017, the date of the Default Letter.  (Torres Decl. Ex. C, ECF No. 9-11 at 2.) Therefore, the correct start date for calculating accrued interest is April 10, 2017, and the Court applies that date to determine the interest award.  29 U.S.C. § 1399(c)(5).

Next, the applicable interest rate on unpaid withdrawal liability "shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of title 26." 29 U.S.C. § 1132(g)(2).  "In determining the rate of interest on overdue withdrawal liability, the applicable federal regulation directs courts to apply a rate as calculated by the Pension Benefit [Guaranty] Corporation ('PBGC'), except as otherwise provided under the relevant plan."  *UFCW Loc. 50 Pension Fund v. Food Depot, Inc.*, No. 16-CV-6197 (ADS)(SIL), 2018 WL 2187657, at *3 (E.D.N.Y. Apr. 24, 2018) (citing 29 C.F.R.

§ 4219.32(b)), *adopted by* 2018 WL 2186407 (E.D.N.Y. May 10, 2018).[7]  The PBGC rates are "the nominal rate for any calendar quarter or portion thereof."  29 C.F.R. § 4219.32(c).  Here, the Fund's Trust Agreement does not set forth applicable rates to calculate interest for unpaid withdrawal liability.  (Torres Decl., ECF No. 9-2 ¶¶ 13–15; Torres Decl. Ex. F, ECF No. 9-14; Pl. Mem., ECF No. 9-3 at 10.)  As a result, the Fund correctly uses the interest rates set forth by the PBGC and provides supporting documentation regarding the relevant interest rates. (Torres Decl., ECF No. 9-2 ¶¶ 13–15; Torres Decl. Ex. E, ECF No. 9-13.)[8]

Finally, the amount of interest due to the plan for overdue or defaulted withdrawal liability, is equal to the overdue defaulted, or overpaid amount multiplied by:

> (1) For each full calendar quarter in the period from the due date (or date of overpayment) to the date paid (or date of refund), one-fourth of the annual rate in effect for that quarter;

> (2) For each full calendar month in a partial quarter in that period, one-twelfth of the annual rate in effect for that quarter; and

> (3) For each day in a partial month in that period, one-three-hundred-sixtieth of the annual rate in effect for that month.

29 C.F.R. § 4219.32(c).  The Fund's calculations pursuant to these formulas are set forth in a summary table covering partial or full calendar quarters between May 25, 2017, and May 15, 2023, with the first quarter starting on May 25, 2017 and ending June 30, 2017.  (Torres Decl., ECF No. 9-2 ¶ 14.)  As noted above, the applicable start date for the accrual of interest is April 10, 2017; therefore, the first period of interest accrual is from April 10, 2017 through June 30,

---

[7] The PBGC interest rates reflect "the average quoted prime rate on short-term commercial loans for the fifteenth day (or next business day if the fifteenth day is not a business day) of the month preceding the beginning of each calendar quarter, as reported by the Board of Governors of the Federal Reserve System in Statistical Release H.15 ('Selected Interest Rates')" and "charged or credited for each calendar quarter at an annual rate."  29 C.F.R. § 4219.32(b).

[8] *See also* PBGC, "Late or Defaulted Withdrawal Liability," (https://perma.cc/WKM3-GRBP).

2017.  *See* 29 U.S.C. § 1399(c)(5).  While the Court amended the Fund's start date for the first quarter, the Court finds that the Fund otherwise correctly applied the relevant formula for this accrual period, which includes full and partial months.  29 C.F.R. § 4219.32(c)(2)–(3).  The Fund also correctly applies the relevant formulas for the remaining quarters between July 1, 2017 through May 15, 2023.  (*See* Table 1.)  Based on the foregoing, the Court respectfully recommends an award of $227,552.64 in accrued interest on withdrawal liability for the period from April 10, 2017 through May 15, 2023.

| Table 1: Accrued interest on Withdrawal Liability (April 10, 2017 through May 15, 2023) | | | | | |
|---|---|---|---|---|---|
| **Principal Withdrawal Liability** | **Start Date[9]** | **End Date[10]** | **Interest Rate[11]** | **Calculation[12]** | **Interest** |
| $849,011 | 04/10/2017 | 06/30/2017 | 3.75% | 29 C.F.R. § 4219.32(c)(2)–(3) | $7,075.09 |
| $849,011 | 07/01/2017 | 09/30/2017 | 4.25% | 29 C.F.R. § 4219.32(c)(1) | $9,020.74 |

---

[9] "Start Date" refers to the first date of the full or partial quarter.

[10] "End Date" refers to the last date of the quarter.

[11] "Interest Rate" refers to the applicable PBGC interest rate for each quarter.

[12] "Calculation" refers to the relevant formula for calculating interest in each full or partial quarter. For example, for the period between July 1, 2017, through September 30, 2017, a full calendar quarter, the interest is calculated by multiplying the overdue withdrawal liability by one-fourth of the annual rate in effect for that quarter: $849,011 x (4.25%/4) = $9,020.74.  29 C.F.R. § 4219.32(c)(1).

As another example, the interest for the period between April 1, 2023, through May 15, 2023, the last quarter in Plaintiff's table, is the sum of the interest for one full calendar month  (April 1, 2023–April 30, 2023) and one partial month (May 1, 2023–May 15, 2023).  *See* 29 C.F.R. § 4219.32(c)(2)–(3).  The interest for the period between April 1, 2023 through April 30, 2023, the full calendar month, is calculated by multiplying the withdrawal liability by one-twelfth of the annual rate in effect for that quarter.  *Id.* § 4219.32(c)(2).  The interest for each day from May 1, 2023 through May 15, 2023, the partial calendar month, is calculated by multiplying the withdrawal liability by one-three-hundred-sixtieth of the annual rate for that quarter.  *Id.* § 4219.32(c)(3).  As a result, for the period between April 1, 2023 through May 15, 2023, the interest rate calculation is: ($849,011 x (7.75%/12)) + ($849,011 x ((7.75%/360) x (15))) = $8,224.79.

| $849,011 | 10/01/2017 | 12/31/2017 | 4.25% | 29 C.F.R. § 4219.32(c)(1) | $9,020.74 |
|---|---|---|---|---|---|
| $849,011 | 01/01/2018 | 03/31/2018 | 4.50% | 29 C.F.R. § 4219.32(c)(1) | $9,551.37 |
| $849,011 | 04/01/2018 | 06/30/2018 | 4.50% | 29 C.F.R. § 4219.32(c)(1) | $9,551.37 |
| $849,011 | 07/01/2018 | 09/30/2018 | 5.00% | 29 C.F.R. § 4219.32(c)(1) | $10,612.64 |
| $849,011 | 10/01/2018 | 12/31/2018 | 5.00% | 29 C.F.R. § 4219.32(c)(1) | $10,612.64 |
| $849,011 | 01/01/2019 | 03/31/2019 | 5.25% | 29 C.F.R. § 4219.32(c)(1) | $11,143.27 |
| $849,011 | 04/01/2019 | 06/30/2019 | 5.50% | 29 C.F.R. § 4219.32(c)(1) | $11,673.90 |
| $849,011 | 07/01/2019 | 09/30/2019 | 5.50% | 29 C.F.R. § 4219.32(c)(1) | $11,673.90 |
| $849,011 | 10/01/2019 | 12/31/2019 | 5.25% | 29 C.F.R. § 4219.32(c)(1) | $11,143.27 |
| $849,011 | 01/01/2020 | 03/31/2020 | 4.75% | 29 C.F.R. § 4219.32(c)(1) | $10,082.01 |
| $849,011 | 04/01/2020 | 06/30/2020 | 3.25% | 29 C.F.R. § 4219.32(c)(1) | $6,898.21 |
| $849,011 | 07/01/2020 | 09/30/2020 | 3.25% | 29 C.F.R. § 4219.32(c)(1) | $6,898.21 |
| $849,011 | 10/01/2020 | 12/31/2020 | 3.25% | 29 C.F.R. § 4219.32(c)(1) | $6,898.21 |
| $849,011 | 01/01/2021 | 03/31/2021 | 3.25% | 29 C.F.R. § 4219.32(c)(1) | $6,898.21 |
| $849,011 | 04/01/2021 | 06/30/2021 | 3.25% | 29 C.F.R. § 4219.32(c)(1) | $6,898.21 |
| $849,011 | 07/01/2021 | 09/30/2021 | 3.25% | 29 C.F.R. § 4219.32(c)(1) | $6,898.21 |
| $849,011 | 10/01/2021 | 12/31/2021 | 3.25% | 29 C.F.R. § 4219.32(c)(1) | $6,898.21 |
| $849,011 | 01/01/2022 | 03/31/2022 | 3.25% | 29 C.F.R. § 4219.32(c)(1) | $6,898.21 |
| $849,011 | 04/01/2022 | 06/30/2022 | 3.25% | 29 C.F.R. § 4219.32(c)(1) | $6,898.21 |
| $849,011 | 07/01/2022 | 09/30/2022 | 4.00% | 29 C.F.R. § 4219.32(c)(1) | $8,490.11 |
| $849,011 | 10/01/2022 | 12/31/2022 | 5.50% | 29 C.F.R. § 4219.32(c)(1) | $11,673.90 |
| $849,011 | 01/01/2023 | 03/31/2023 | 7.50% | 29 C.F.R. § 4219.32(c)(1) | $15,918.96 |
| $849,011 | 04/01/2023 | 05/15/2023 | 7.75% | 29 C.F.R. § 4219.32(c)(2)–(3) | $8,224.79 |
| | | | | **Total:** | $227,552.64 |

Plaintiff is also entitled to prejudgment interest from the day the instant motion was filed to the date judgment is entered. *Bakery & Confectionery Union*, 2022 WL 18107257, at *11. The Court calculates $43,777.13 of accrued interest from May 16, 2023 through December 31, 2023, using the applicable PBGC interest rates. (*See* Table 2.)

| Table 2: Accrued interest on Withdrawal Liability (May 16, 2023 through December 31, 2023)[13] | | | | | |
|---|---|---|---|---|---|
| Principal Withdrawal Liability | Start Date | End Date | Interest Rate | Calculation | Interest |
| $849,011 | 05/16/2023 | 06/30/2023 | 7.75% | 29 C.F.R. § 4219.32(c)(2)–(3) | $8,224.79 |
| $849,011 | 07/01/2023 | 09/30/2023 | 8.25% | 29 C.F.R. § 4219.32(c)(1) | $17,510.85 |
| $849,011 | 10/01/2023 | 12/31/2023 | 8.50% | 29 C.F.R. § 4219.32(c)(1) | $18,041.48 |
| | | | | **Total:** | $43,777.13 |

From January 1, 2024 through the date of judgment, the daily amount for prejudgment interest is **$200.46** per day.[14]

Based on the foregoing, the Court respectfully recommends an award of **$271,329.77** for accrued interest on withdrawal liability for the period from April 10, 2017 through December 31, 2023 ($227,552.64 + $43,777.13), and additional prejudgment interest at the rate of **$200.46** per day for the period from January 1, 2024 until the date judgment is entered.

## C.    Liquidated Damages

The Fund further seeks liquidated damages equal to the interest on the unpaid withdrawal liability. (Pl. Mem., ECF No. 9-3 at 11.) "ERISA permits the Court to award

---

[13] The column headers in Table 2 reflect the same information as the column headers in Table 1. *See* nn. 9–12, *supra*.

[14] The Court calculates the per diem interest pursuant to 29 C.F.R. § 4219.32(c)(3) and the applicable PBGC interest rate of 8.50% for the relevant period as follows: ($849,011 x (8.50%/360)) = $200.46.

liquidated damages equal to the greater of either: (1) the interest on the unpaid contributions; or (2) the amount designated by the CBA (up to 20 percent of the delinquent contributions). *G & W Food Prod., Inc.*, 2021 WL 3934139, at *6 (citing 29 U.S.C. § 1132(g)(2)(C)); *Ret. Fund of Loc. 1482*, 2023 WL 7688689, at *5.  As with the applicable interest rate, the Fund's Trust Agreement does not provide for a specific amount of liquidated damages for withdrawal liability.  (Torres Decl. Ex. F, ECF No. 9-14.)  Therefore, the Court respectfully recommends that the Fund should be awarded **$271,329.77** in liquidated damages, the calculated[15] interest through December 31, 2023, and any accrued interest of **$200.46** per day from January 1, 2024 until the date judgment is entered.

### D.    Costs

The Fund seeks $1,402.78 in costs, including $402 in filing fees and $1,000.78 in process server fees.  (Pl. Mem., ECF No. 9-3 at 11–12; Torres Decl. Ex. G, ECF No. 9-15.) "When a prevailing party seeks to recover those costs associated with the prosecution of an action, the court is permitted to award reasonable expenses incurred by the attorneys and charged to clients." *Ret. Fund of Loc. 1482*, 2023 WL 7688689, at *7 (cleaned up).  Further, the Court permissibly takes judicial notice of the docket notations for paid filing fees. *Phillips v. TraxNYC Corp.*, No. 21-CV-528 (LDH)(MMH), 2023 WL 1987206, at *11 (E.D.N.Y. Feb. 14, 2023), *adopted by* 2023 WL 2532006 (E.D.N.Y. Mar. 14, 2023).  Here, the Fund is entitled to the filing fee for this case, as the docket reflects that the Fund paid the $402.  (ECF No. 1 Dkt. Entry.)  The Fund also submits receipts to support the service costs. (Torres Decl. Ex. G,

---

[15] The Court calculated the liquidated damages as the interest accrued to date as follows: $227,552.64 (interest on withdrawal liability for the period from April 10, 2017 through May 15, 2023) + $43,777.13 (interest on withdrawal liability from May 16, 2023 through December 31, 2023) = $271,329.77.

ECF No. 9-15 at 2–4.)  The Court finds these costs to be documented and reasonable, and therefore, respectfully recommends that the Fund should be awarded **$1,402.78** in costs.

### E.     Post-Judgment Interest

The Fund did not specifically request post-judgment interest in the Complaint or in the default motion submission.  However, "the award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered." *Tru-Art Sign Co. v. Loc. 137 Sheet Metal Workers Int'l Ass'n*, 852 F.3d 217, 223 (2d Cir. 2017) (citing 28 U.S.C. § 1961). Accordingly, the Court respectfully recommends that Plaintiff should be granted post-judgment interest, to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, at the rate set forth in 28 U.S.C. § 1961.

## VII.   <u>CONCLUSION</u>

For all the foregoing reasons, the Court respectfully recommends that the Fund's motion for default judgment at ECF No. 9 should be granted in part as follows: (1) a default judgment should be entered against Defendant[16] and (2) the Fund should be awarded damages in the amount of **$1,393,073.32**, which includes:

(1) **$849,011** in withdrawal liability principal;

(2) **$271,329.71** in accrued prejudgment interest on withdrawal liability from April 10, 2017 through December 31, 2023, and any accrued interest of **$200.46** per day from January 1, 2024 until the date judgment is entered;

(3) **$271,329.71** in liquidated damages, which will continue to accrue at the rate of **$200.46** per day from January 1, 2024 until the date the judgment is entered;

---

[16] The Fund's proposed default judgment (ECF No. 9-8) should be amended to reflect the recommendations herein.

(4) **$1,402.78** in costs; and

(5) post-judgment interest at the statutory rate.

A copy of this Report and Recommendation is being served on Plaintiff via ECF.  The Clerk of Court is respectfully directed to serve a copy of this Report and Recommendation to Defendant Joseph Eletto Transfer, Inc. at the following addresses forthwith: (1) 600 West John Street, Hicksville, New York 11801; and (2) 575 Underhill Boulevard, Syosset, New York 11791.

Within 14 days of service, any party may serve and file specific written objections to this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  Any requests for an extension of time to file objections shall be directed to Judge Irizarry.  If a party fails to object timely to this Report and Recommendation, it waives any right to further judicial review of this decision.  *See Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 120 (2d Cir. 2022).

**SO ORDERED.**

Brooklyn, New York
February 1, 2024

/s/Marcia M. Henry
MARCIA M. HENRY
United States Magistrate Judge